IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY DUMANIAN, RANDA DUMANIAN, and ADOM DUMANIAN, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 19 C 6771 |
| MARK SCHWARTZ, YAJIA HU SCHWARTZ, TAX LIEN LAW GROUP, LLC, and SULION, LLC, | ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Dr. Gregory Dumanian, Randa Dumanian, and Adom Dumanian (collectively, Dumanian) have sued Dr. Mark Schwartz, Yajia Hu Schwartz, Lindsey Schwartz, Leo Schwartz, Camila Lozano, Tax Lien Group, LLC, and Sulion LLC (collectively, Schwartz). Dumanian alleges that Schwartz improperly gained control of the company they founded together, Mesh Suture Inc., by coercing him to sign board resolutions providing Schwartz majority control of the company's board and a settlement agreement releasing claims against Schwartz. Dumanian seeks recission of both documents based on economic duress (counts 1 and 2), a declaratory judgment that the board resolutions are void and unenforceable (count 3), and a declaratory judgment that Schwartz is not the CEO of Mesh Suture (count 4). Dumanian also asserts a claim of unjust enrichment (count 5).

On July 13, 2022, Judge John Z. Lee granted Dumanian's motion for a

preliminary injunction after holding a three-day evidentiary hearing. *See Dumanian v. Schwartz*, No. 19 C 6771, 2022 WL 2714994 (N.D. Ill. July 13, 2022). On September 8, 2022, this case was reassigned to the undersigned judge. Dumanian now moves for summary judgment on all his claims. Based on Lindsey Schwartz, Leo Schwartz, and Camila Lozano's notice of settlement with Dumanian, the Court granted summary judgment in Dumanian's favor against those defendants on March 24, 2023. Dumanian's summary judgment motion remained pending as to the remaining defendants. For the reasons stated below, the Court grants the motion with respect to count 4 but otherwise denies it.

## Background

The following facts are undisputed unless otherwise noted.

Dumanian and Schwartz are co-founders of Mesh Suture, Inc., which is a medical device company. In January 2018 and March 2019, Mesh Suture conducted two rounds of Series A financing and raised over $10 million from approximately forty-eight investors, including Dumanian's family, friends, and colleagues. At this point, Dumanian and Schwartz were the only two members of Mesh Suture's board of directors, but the Series A shareholders were given the right to vote for a Series A board representative.

**A.    Schwartz's termination**

In August 2019, the relationship between Dumanian and Schwartz deteriorated. They clashed over Schwartz's request for a $324,000 loan from Mesh Suture. When Dumanian did not approve the loan, Schwartz's son, at Schwartz's direction, locked Dumanian and his family out of their work e-mail accounts and databases. Schwartz

2

then transferred the $324,000 from Mesh Suture's bank account to his personal account. Schwartz asserts that this transfer was authorized; Dumanian says it was not. On August 30, 2019, Schwartz also took "emergency action" as CEO to appoint himself as "Interim Series A Board Member." Pls.' Opening Mem., Ex. 8.

In response, Dumanian fired Schwartz from Mesh Suture. On August 31, 2019, Dumanian sent Schwartz an email stating that "as of tonight August 31, 2019," Schwartz was "no longer CEO of Mesh Suture." Pls.' Opening Mem., Ex. 10 at 1. Schwartz's termination letter, which was attached to the email, stated that he was terminated "effective immediately pursuant to Paragraph 6a of the signed Amended and Restated Founders Agreement dated October 15, 2015, and repeated in [his] recent employment agreement dated as of Jan 1, 2019." *Id.* at 2. Schwartz responded the following day by rejecting the termination, asserting that it was "entirely without legal effect." Pls.' Opening Mem., Ex. 12 at 1.

**B.    Schwartz's response**

On September 2, 2019, Schwartz again locked Dumanian out of Mesh Suture work accounts. He then sent an email to "Team," which was a group composed of the Series A investors, business partners, surgeons, and members of the Mesh Suture Scientific Advisory Board. Pls.' Opening Mem., Ex. 13 at 1. The email called Dumanian "a serious and dangerous threat" and outlined several improper actions purportedly taken by Dumanian and his wife, Randa, including an "illegal retaliatory discharge of its CEO, attempted extortion, and armed hostile takeover of Mesh Suture and its headquarters in Puerto Rico." *Id.* Schwartz attached to the email draft special emergency board meeting minutes that would ratify his appointment as Interim Series A

3

Board Member, remove Dumanian as a board member, nullify the appointment of Randa and Adom Dumanian to the board, and lower the number of board seats from nine to five. Dumanian refused to sign these board minutes.

The following day, as Dumanian was attempting to secure Mesh Suture's bank account, he learned that all the money in the account had been transferred out. Bank statements reflect that Schwartz transferred nearly $4 million to another account. Schwartz testified that the other account "'didn't have anything to do with' Mesh Suture," Pls.' Stmt. of Material Facts ¶ 25 (quoting Hr'g Tr. at 461:13–16), though, according to Schwartz, he made this transfer to "safeguard" the money, Hr'g Tr. at 468:4–5.

After discovering that Schwartz had transferred the money, Randa sought help from the local police in Puerto Rico (where Mesh Suture was headquartered), but the police "declined to assist." Pls.' Stmt. of Material Facts ¶ 27. The members of the Dumanian family each testified regarding the emotional toll that the missing money had on them. Dumanian said that he was "despondent" and "fearful," Randa stated that she "was in an utter panic," and Adom testified to losing weight and having "[v]ery high anxiety." Hr'g Tr. at 92:6–7, 531:7–8, 701:12–14. Randa's contemporaneous journal entries also describe her family's distress. Dumanian "was terrified that Schwartz had already moved the money overseas, at which point there would have been virtually no way for Mesh Suture to get it back." Pls.' Stmt. of Material Facts ¶ 34.

**C.     The September 5 board meeting minutes and settlement agreement**

On September 5, 2019, Dumanian signed Schwartz's proposed board minutes for a special emergency meeting that purportedly was held that morning. Dumanian testified that he never received notice of a special meeting and that there was not a

4

board meeting that day. Schwartz, on the other hand, testified that a text message from Dumanian to Schwartz on September 5 stating, "[h]ey, am ready to respond to your proposal. Let's get this done this morning! I do have some questions and concerns though" constituted notice. Dkt. no. 315-33 at 30. Schwartz then replied telling Dumanian to call him, and Schwartz testified that they spoke on the phone for about an hour that morning. According to Schwartz, that conversation was the special board meeting.

The September 5 board minutes amended Mesh Suture's bylaws to reduce the number of board seats from nine to five and ratified the appointment of Dumanian and Schwartz as Interim Series A Board Members. It also established the following: 1) Schwartz will designate two board members, 2) the CEO (which the minutes stated is still Schwartz) or a person designated by the CEO will be a board member, and 3) the board's chairman (also Schwartz) will designate a board member, which "shall initially be Gregory Dumanian." Pls.' Opening Mem., Ex. 16 at 2. The effect of this amendment was that Schwartz controlled four of the five board seats.

Dumanian and Schwartz have differing accounts of the process that lead up to Dumanian signing the minutes. Dumanian testified that Schwartz told him "that he would return the money if [ ] Dumanian agreed to [his] demands." Pls.' Stmt. of Material Facts ¶ 45. Dumanian also testified that Schwartz did not permit him to make any changes. In contrast, Schwartz testified that they negotiated back-and-forth on the board minutes. After their phone call, Schwartz testified, he sent minutes reflecting their agreed upon changes to Dumanian, and Dumanian returned the signed document a few hours later. It is undisputed that Dumanian was represented by counsel at this time and

5

that Schwartz, an attorney, communicated directly with Dumanian rather than his counsel.

In addition to the board minutes, the Dumanians signed a settlement agreement with Schwartz and Mesh Suture on September 9, 2019. The settlement contained a release of all claims that any party "has, ever had or may have." Pls.' Opening Mem., Ex. 17 at 3–4. As with the board minutes, the parties disagree on how the agreement was reached. Dumanian testified that he "was forced to" sign the agreement so Schwartz "would put back the money" and that his proposed changes were not accepted. Hr'g Tr. at 104:24–25. Dumanian also testified that he, in turn, then "forced" Randa and Adom to sign it as well. *Id.* at 105:6–8. Schwartz, on the other hand, asserts that Dumanian signed the agreement "following open and free, back and forth negotiations" that involved "multiple redlined drafts." Defs.' Resp. Br. at 17. Dumanian was still represented by counsel, and Schwartz again did not communicate with Dumanian's counsel in connection with the negotiation of the agreement.

On September 6, 2019, Schwartz returned the money to Mesh Suture's company account. Dumanian did not learn the money was back in the account until September 17, when he received a letter from Mesh Suture's bank.[1]

## Discussion

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P.

---

[1] Dumanian received definitive confirmation that the money was returned in October 2019 when bank statements were produced during discovery in an interpleader action filed by Mesh Suture's bank. *See Wells Fargo Bank, N.A. v. Mesh Suture, Inc.*, 31 F.4th 1300 (10th Cir. 2022).

56(a); *Martinsville Corral, Inc. v. Soc'y Ins.*, 910 F.3d 996, 998 (7th Cir. 2018).  There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In analyzing the evidence, the Court must construe all facts and reasonable inferences in the nonmovant's favor.  *See Orozco v. Dart*, 64 F.4th 806, 814 (7th Cir. 2023).

As a preliminary matter, Dumanian argues that the Court should disregard portions of Schwartz's Local Rule 56.1 filings as improper.  He contends that Schwartz's response to his statement of facts does not comport with Local Rule 56.1(e)'s requirements to "consist of numbered paragraphs," "cite specific evidentiary material," and "not set forth any new facts" or "assert legal arguments."  N.D. Ill. L.R. 56.1(e).  Dumanian further contends that Schwartz's statement of additional facts violates Local Rule 56.1(d) in numerous ways, including by failing to cite to specific evidentiary material and making improper legal arguments.

The Court agrees that most of Schwartz's facts and responses contain improper legal conclusions and fail to adequately cite to the record.  It is not necessary, however, for the Court to determine exactly which statements should not be relied upon on summary judgment.  Where appropriate, the Court notes what evidence it relies upon in making its decision and disregards cited material that fails to comport with the requirements of the Local Rules.[2]

---

[2] For example, the Court disregards Schwartz's contention that Dumanian committed perjury because it is not supported by specific evidentiary material.  To the extent

**A.     Counts 1 and 2**

Dumanian seeks summary judgment on counts 1 and 2, which seek recission of the September 5 board resolutions and settlement agreement based on economic duress.  Under Illinois law, which both parties agree applies to Dumanian's duress claims, "a contract executed under duress is voidable." *Kaplan v. Kaplan*, 25 Ill. 2d 181, 185, 182 N.E.2d 706, 709 (1962).  "Illinois defines duress as a condition where one is induced by a wrongful act or threat of another to make a contract under circumstances which deprive him of the exercise of his free will." *Rissman v. Rissman*, 213 F.3d 381, 386 (7th Cir. 2000) (internal quotation marks omitted).  Thus, "[i]n order to sustain a claim of economic coercion or duress, plaintiffs must establish 1) a wrongful act and 2) the absence of the quality of mind essential to the making of a contract." *Alexander v. Standard Oil Co.*, 97 Ill. App. 3d 809, 816, 423 N.E.2d 578, 584 (1981).

Wrongful acts are "not limited to acts that are criminal, tortious or in violation of a contractual duty, but extend[] to acts that are wrongful in a moral sense." *Kaplan*, 25 Ill. 2d at 186, 182 N.E.2d at 709.  Dumanian argues that the "wrongful act" element is satisfied as a matter of law because, he contends, it is undisputed that Schwartz induced him to sign the documents with several wrongful acts and threats, including improperly transferring $4 million out of Mesh Suture's bank account.  The Court does not need to resolve this issue at the present juncture.  To be entitled to summary judgment on a duress claim, "[b]eyond the necessity of showing a wrongful act on the part of defendant, plaintiffs must establish that economic duress left them 'bereft of the

---

Schwartz seeks sanctions for Dumanian's purported perjury in the form of "dismissal" or a "show cause order," Defs.' Resp. Br. 29–31, the Court overrules that request.

quality of mind essential to the making of a contract.'" *Alexander*, 97 Ill. App. 3d at 816, 423 N.E.2d at 583; see also *Rissman*, 213 F.3d at 386 ("The essential question is whether a 'threat has left the individual bereft of the quality of mind essential to the making of a contract.'" (quoting *Kaplan*, 25 Ill. 2d at 186, 182 N.E.2d at 709)). The Court concludes that the facts, taken in the light most favorable to Schwartz, do not require a reasonable jury to find that this element is satisfied—as would be necessary to entitle Dumanian to entry of summary judgment.

In Illinois, this element requires a subjective inquiry into the state of mind of the person allegedly subjected to duress. See *Kaplan*, 25 Ill. 2d at 186, 182 N.E.2d at 709 ("[T]he standard of whether a man of ordinary courage would yield to the threat has been supplanted by a test which inquires whether the threat has left the individual bereft of the quality of mind essential to the making of a contract."). Thus, "the issue of duress generally is one of fact, to be judged in light of all the circumstances surrounding a given transaction" and "must be determined by the trier of fact." *Laemmar v. J. Walter Thompson Co.*, 435 F.2d 680, 682 (7th Cir. 1970) (quoting *Weather-Gard Indus., Inc. v. Fairfield Sav. & Loan Ass'n*, 110 Ill. App. 2d 13, 22, 248 N.E.2d 794, 799 (1969)). As a general rule, summary judgment is not "the proper place to resolve this factual question." *Weather-Gard*, 110 Ill. App. 2d at 22, 248 N.E.2d at 799.

Dumanian contends that there is "ample undisputed evidence as to the deleterious effect Schwartz's extortive conduct" had on him, pointing to the family members' testimony regarding their emotional state after discovering that Schwartz had taken Mesh Suture's money. Pls.' Opening Mem. at 12. But a reasonable jury could doubt their credibility on this point. It is undisputed that Dumanian was represented by

9

counsel at the time he signed the documents. See Pls.' Resp. to Defs.' Stmt. of Material Facts ¶ 98 ("Plaintiffs do not dispute that they were represented by counsel (not their litigation counsel here) when they signed the Invalid Board Minutes and Invalid Settlement Agreement."). Whether "each plaintiff had access to and consulted with an attorney prior to signing the agreement" is "significant in rebutting a claim of economic coercion." *Alexander*, 97 Ill. App. 3d at 816, 423 N.E.2d at 583; *see also Rissman*, 213 F.3d at 386 (affirming summary judgment against a duress claim where the plaintiff "had legal and financial advice"); *Curran v. Kwon*, 153 F.3d 481, 489 (7th Cir. 1998) (holding that "the record simply would not support a determination by the trier of fact that she executed the release under duress" where the plaintiff "had the advice of both her French and American counsel").

Dumanian also contends that he "believed that the only way to get the money back from Schwartz was to" sign the documents. Pls.' Opening Mem. at 13. "The hallmark of duress or extortion is that the victim has no feasible legal remedy." *Oxxford Clothes XX, Inc. v. Expeditors Int'l of Washington, Inc.*, 127 F.3d 574, 579 (7th Cir. 1997). But Dumanian does not explain in his briefing why litigation would not have been feasible, other than to state that "from Plaintiffs' perspective, litigation was not an option either because Randa Dumanian had already unsuccessfully sought help from the local police in Puerto Rico." Pls.' Opening Mem. at 13. The fact that local police in Puerto Rico would not help Randa does not remove genuine dispute regarding the proposition that litigation was not a feasible remedy. Although a jury may find Dumanian's belief credible, the Court is not persuaded that a reasonable jury would be required to do so, which is what Dumanian has to show to obtain summary judgment.

Dumanian cites *Development Specialists, Inc. v. Comdisco, Inc.*, No. 05 C 6238, 2006 WL 8461691, at *6 (N.D. Ill. Apr. 10, 2006), for the proposition that a party "cannot avoid summary judgment merely by arguing the existence of economic duress is a factual issue to be resolved by the finder of fact." Pls.' Opening Mem. at 9-10 (alterations accepted). But this Court in that case concluded that the plaintiff's duress claim failed as a matter of law. It did not address one way or another factual issues that may preclude summary judgment *in favor* of a party claiming duress.

In sum, because a reasonable jury could find that Dumanian was not deprived "the exercise of his free will," *Rissman*, 213 F.3d at 386, the Court declines to grant summary judgment on the economic duress claims in counts 1 and 2.

**B.     Count 3**

Dumanian also moves for summary judgment on count 3, which seeks a declaratory judgment that the September 5 board meeting minutes are "void and unenforceable." Pls.' Opening Mem. at 8. Dumanian contends that summary judgment is warranted for two independent reasons: 1) 48-hours' notice was not provided for the September 5 special meeting as required under Mesh Suture's bylaws and 2) no special meeting occurred. The Court addresses each contention in turn.

First, it is undisputed that Section 3.7 of the bylaws requires 48-hours' notice for a special board meeting. Schwartz contends that Gregory sent him notice via a text message on September 5 stating: "Hey, am ready to respond to your proposal. Let's get this done this morning! I do have some questions and concerns though." Dkt. no. 315-33 at 30. But even if this text message could function as notice of a special meeting, it is indisputably not 48-hours' notice of the September 5 meeting.

11

Schwartz's second argument has more merit. He contends that Mesh Suture's bylaws allow for waiver of notice. As support, Schwartz cites paragraph 100 from his statement of facts and "Grp._Ex. P," which, as explained above, violates Local Rule 56.1. But the Court does not rely on Schwartz's evidence because Dumanian acknowledges that Section 3.9 of the bylaws allows for waiver of notice. Section 3.9 states that notice of a special meeting can be waived via a "written waiver" or "[a]ttendance of a person at a meeting." Pls.' Opening Mem., Ex. 20 at 8. The September 5 board meeting minutes state that "[e]ach of the Board Members signing below confirms that he/she has received notice of this [sic] meeting special meeting." Pls.' Opening Mem., Ex. 16 at 1. Dumanian does not explain why this does not function as a written waiver. He points out that the meeting minutes do not literally use the word "waiver," but he makes no argument supporting the proposition that this exact language is required. In any event, Dumanian does not address the fact that attendance at the meeting can waive notice under Section 3.9. Thus, the Court could not grant summary judgment on this claim unless there is no genuine dispute that the meeting did not occur.

This leads to Dumanian's second asserted ground for summary judgment on this claim, which is that no special meeting occurred. As evidence that the special meeting did not occur, Dumanian relies solely on his testimony to that effect. Schwartz, in response, contends that a special meeting did occur. According to Schwartz, he responded to Dumanian's text described above by telling Dumanian to call him, and after Dumanian did so, they spoke on the phone for about an hour. Schwartz's phone records reflect that a sixty-nine-minute phone call occurred on September 5. *See* Dkt.

no. 315-33 at 44.  Although it is true, as Dumanian points out, that Schwartz's citation to his phone records is not in compliance with Local Rule 56.1, Dumanian does not otherwise dispute that he had a phone call with Schwartz on September 5.[3]  Rather, Dumanian asserts that Schwartz has "offered no evidence . . . that such a call was a 'special meeting' as contemplated by the Bylaws."  Pls.' Reply Br. at 13.  But as Dumanian acknowledges, Section 3.5 of the bylaws allows a special meeting to take place telephonically.  Although it may be true, as Dumanian contends, that "not all telephone calls involving any members of a corporate board are 'special meetings,'" Pls.' Reply Br. at 13, Dumanian provides no evidence that *this* phone call was not a special meeting beyond his say-so.  Because "district courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations," *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citations and internal quotation marks omitted), Dumanian and Schwartz's conflicting testimony is sufficient to create a genuine factual dispute regarding whether a special meeting took place over the phone on September 5.

**C.    Count 4**

Dumanian's fourth claim seeks a declaratory judgment "that Dr. Dumanian lawfully and properly terminated Schwartz from his position as an employee (the CEO) of Mesh Suture under Schwartz's Employment Agreement."  Pls.' Opening Mem. at 17.  Dumanian contends that summary judgment is warranted because there is no dispute

---

[3] Because Dumanian does not dispute that a call took place on September 5, the Court need not rely on Schwartz evidence of his phone records.  In any event, "it is clear that the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion."  *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011).

13

that Schwartz's employment agreement provided Dumanian the right to terminate Schwartz without cause. The Court agrees.

Schwartz's employment agreement states that it "shall be interpreted in accordance with the laws of the State of New York." Pls.' Opening Mem., Ex. 9 at 5. Under "New York law, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Donohue v. Cuomo*, 38 N.Y.3d 1, 13, 184 N.E.3d 860, 867 (2022) (alteration accepted) (internal quotation marks omitted). Section 6(a) of the agreement states that "[e]ither Party or Gregory Dumanian shall have the right to terminate this Agreement with or without cause on 90 days' written notice to the other Party at any time." Pls.' Opening Mem., Ex. 9 at 3. Thus, by its plain and unambiguous terms, the agreement provides Dumanian the right to terminate Schwartz's employment.

Dumanian contends that he did terminate Schwartz's employment in writing on August 31, 2019. Schwartz does not dispute that this occurred but rather argues that the purported termination was ineffective. First, he contends that only Mesh Suture's board could remove the CEO under its bylaws. Section 5.4 of the bylaws states that "[s]ubject to the rights, if any, of an officer under any contract of employment, any officer may be removed, either with or without cause, by an affirmative vote of the majority of the Board." Pls.' Opening Mem., Ex. 9 at 12. Thus, although the Board "may" remove an officer, the bylaws expressly state that this power is subject to the officers' employment agreements.

Schwartz also asserts that Dumanian's termination claim is "refuted by Dr. Schwartz's testimony and both Founders 2019 Employment Agreements, stating that

14

they switched roles in 2019." Defs.' Resp. Br. at 9. Schwartz does not clarify what he means by "switched roles." And, in any event, this assertion is not supported by any evidence other than "Grp_Ex. E-F," which the Court disregards as violating Local Rule 56.1 as explained above.

Finally, Schwartz contends that his employment agreement required 90-days' notice, which he was not provided. Dumanian does not contest that he failed to provide 90-days' notice as required by the agreement. But, under New York law, a failure to provide proper notice does not invalidate Schwartz's termination. *See Delvecchio v. Bayside Chrysler Plymouth Jeep Eagle, Inc.*, 271 A.D.2d 636, 638–39, 706 N.Y.S.2d 724, 726 (App. Div. 2000) (holding that the defendants' "failure to provide written notice to the plaintiff did not . . . render the termination for cause ineffective" because "they did not forfeit their right to terminate the agreement for cause"). Rather, his termination simply becomes effective once the contractual notice period has expired. *See Bitterman v. Gluck*, 256 A.D. 336, 337, 9 N.Y.S.2d 1007, 1008 (App. Div. 1939) ("If the employer has the unconditional right to terminate the contract of employment after a certain notice, discharge has the effect of notice to terminate and damages are allowed only up to the time the contract would have terminated if notice had been given."). For this reason, the Dumanians contend that the notice requirement is irrelevant to "a declaration that Schwartz is not *currently* the CEO of Mesh Suture." Pls.' Reply Br. at 19. They quote from Judge Lee's preliminary injunction order observing that the notice requirement "would mean only that the termination did not take effect until November 29, 2019, when the contractual notice period expired." *Id.* at 19 n.10 (quoting *Dumanian*, 2022 WL 2714994, at *13 n.11).

15

The Court agrees that Dumanian's failure to give notice does not preclude a declaration that Schwartz is not currently the CEO of Mesh Suture. In their complaint and at other points in their briefing, however, Dumanian requests a declaratory judgment that "Schwartz was lawfully terminated from his employment at Mesh Suture as of August 31, 2019, and at that point, ceased to be an employee of Mesh Suture." Pls.' Opening Mem. at 19. Dumanian never attempts to square this with the argument that without proper notice, "the employment ends at 'the time the contract would have terminated if notice had been given.'" Pls.' Reply Br. at 19 (quoting *Andrews v. Sotheby Int'l Realty, Inc.*, No. 12 C 8824(RA), 2014 WL 626968, at *5 (S.D.N.Y. Feb. 8, 2014), *aff'd*, 586 F. App'x 76 (2d Cir. 2014)). Thus, the Court grants Dumanian's motion for summary judgment on count 4, but only to the extent that count 4 seeks a determination Schwartz was lawfully terminated from his employment at Mesh Suture as of November 29, 2019.[4]

**D.    Count 5**

The Court applies Illinois law in considering Count 5, Dumanian's unjust enrichment claim because Dumanian only cites Illinois law, and, in response, Schwartz does not contest that Illinois law applies to this claim. *See Antrim Pharms. LLC v. Bio-Pharm, Inc.*, 950 F.3d 423, 432 n.4 (7th Cir. 2020) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply

---

[4] This also means that Dumanian's argument that "it also follows" from Schwartz's termination that the board minutes and settlement agreement are invalid because Schwartz signed them as the purported CEO, Pls.' Opening Mem. at 19 n.7, is incorrect. Those documents were signed in September, which is before the effective date of Schwartz's termination.

16

applies the law of the state in which the federal court sits." (quoting *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991))).

Unjust enrichment "is not a separate cause of action" under Illinois law. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 735 (7th Cir. 2019). "Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011) (quoting *All. Acceptance Co. v. Yale Ins. Agency, Inc.*, 271 Ill. App. 3d 483, 492, 648 N.E.2d 971, 977 (1995)). As Dumanian acknowledges, the unjust enrichment claim "'will stand or fall' with . . . its associated duress claim." Pls.' Opening Mem. at 20 (quoting *Anderson v. Rush St. Gaming, LLC*, No. 20 C 4794, 2021 WL 4439411, at *7 (N.D. Ill. Sept. 28, 2011)). Because the Court has denied Dumanian's motion for summary judgment on the duress claims, it also denies the motion with respect to the unjust enrichment claim.

## Conclusion

For the foregoing reasons, the Court grants the plaintiffs' motion for summary judgment on count 4, but only to the extent that count 4 seeks a finding that defendant Mark Schwartz was lawfully terminated from his employment at Mesh Suture as of November 29, 2019. The Court otherwise denies the plaintiffs' motion for summary judgment [dkt. no. 284].

Date: June 20, 2023

_____
MATTHEW F. KENNELLY
United States District Judge