IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY DUMANIAN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 19 C 6771 |
| ) | |
| MARK SCHWARTZ, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Gregory Dumanian, Randa Dumanian, and Adon Dumanian have asked the Court to sanction defendants Mark Schwartz, Yajia Schwartz, Tax Lien Law Group, LLC, and Sulion, LLC for violating the preliminary injunction order entered by the previously assigned judge and, as to Mark Schwartz, for making misrepresentations regarding his ownership of stock in Mesh Suture, Inc.

Specifically, plaintiffs contend that Mark Schwarz violated the preliminary injunction order by: (1) "issuing unauthorized, harassing correspondence to Mesh Suture's manufacturer's parent company executives at Corza Medical"; (2) slandering Mesh Suture's surgical device in a Facebook group comprising hernia surgeons; (3) making certain court filings in a lawsuit against him in Maryland state court; and (4) sending certain correspondence to a Maryland county sheriff in connection with the sheriff's sale of Mesh Suture shares. *See* dkt. no. 383 at 1.

The alleged misrepresentations by Schwartz involve statements before the predecessor judge in this case, Judge John Lee, during a 2022 preliminary injunction

hearing that he (Schwartz) was, at the time, an owner of a majority stake in Mesh Suture. Schwartz later made statements in connection with the Maryland litigation (and perhaps elsewhere) that he had transferred his Mesh Suture shares to his wife, Yajia Schwartz in 2020, two years before the preliminary injunction hearing.

In their request for relief, plaintiffs ask the Court to "hold Schwartz in civil contempt, strike Schwartz's and the [other defendants'] Answers and Defenses, enter judgment against them, and award Plaintiffs their attorneys' fees related to this Motion." Pls.' Mot. for Sanctions at 27.

**1.      Alleged violations of preliminary injunction order**

The first issue for the Court to address is exactly what "order(s)" plaintiffs contend Mark Schwartz violated. Their motion refers to Judge Lee's preliminary injunction opinion (dkt. 233), the preliminary injunction itself (dkt. 234), and an earlier minute entry (dkt. 129). The minute entry, however, simply memorializes a representation made to the Court by Schwartz, as follows:

> During the hearing, counsel for Defendant Mark Schwartz represented to the Court that Mr. Schwartz agrees to the following, until further order of the Court: (1) he will not take any action to interfere or impede the launch of Mesh Suture product in Europe and any other countries in which the product's sale and use has been authorized. . . .

Dkt. 129. This minute entry was made in connection with an initial hearing on the motion for preliminary injunction, and there is a good argument that the preliminary injunction amounts to a "further order of the Court" that supersedes the minute entry. But that aside, the minute entry itself is not worded as a court order: as indicated, it simply memorializes a representation made by Schwartz's counsel. For these reasons, the Court sets aside the minute entry as a basis for imposing sanctions.

2

Second, the preliminary injunction *opinion* is a description of Judge Lee's reasons for granting a preliminary injunction. It is not itself an order; the order is the preliminary injunction entered the same day. Federal Rule of Civil Procedure 65(d) requires an order granting an injunction to, among other things, "state its terms specifically[,] and describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B)-(C). Judge Lee's injunction did that, as the Court will discuss in a moment. Supposed prohibitions found only in the accompanying opinion are not appropriately considered as a part of the injunction under Rule 65(d). *See Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 646 (7th Cir. 2002) ("Rule 65(d) requires that the injunction be self-contained; its terms may not be filled out by reference to another document."). *See also, e.g., Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412, 414-15 (7th Cir. 2008) (quoting *PMD, Inc. v. Sherwin-Williams Co.*, 141 F.3d 610, 619 (7th Cir. 1998), for the proposition that an injunction must "be precise and self-contained, so that a person subject to it *who reads it and nothing else* has a sufficiently clear and exact knowledge of the duties it imposes on him that if he violates it he be adjudged guilty of criminal contempt." (emphasis added)).

The Court therefore turns to the preliminary injunction order itself. The relevant part states:

> 4. Defendant Mark Schwartz shall not:
>
> a. take any action in direct or indirect reliance upon the purported Board Minutes dated September 5, 2019, including but not limited to any Board of Directors ("Board") action whatsoever on behalf of Mesh Suture, Inc. (the "Company"), until the conclusion of this litigation or further order of this Court. Examples of enjoined conduct include: general supervision of Company business; appointment of officers; issuance of Company

3

>stock; execution of any contract, transaction, or business venture on behalf of the Company; any act delegated to the Company's Board by the Company Bylaws, ECF No. 125-27; and any transaction involving the building at D83 Calle C, Costa De Oro, Dorado, Puerto Rico, 00646.
>
>b. take any action directly or indirectly in reliance upon his purported authority as the Company's CEO pursuant to the Employment Agreement dated January 1, 2019, ECF No. 125-9, until the conclusion of this litigation or further order of this Court. Examples of enjoined conduct include: general supervision of Company business; supervision and control over Company finances; execution of any contract, transaction, or business venture on behalf of the Company; hiring, firing, or other employment decisions; appointment of directors to the Board; any representation to any person or entity that he is the Company's CEO; any act delegated to the Company's Board by the Company Bylaws, and any transaction involving the building at D83 Calle C, Costa De Oro, Dorado, Puerto Rico, 00646.

Dkt. 234 at 2-3.

Most of the alleged misdeeds cited by plaintiffs in support of their motion involve written statements made by Schwartz in other litigation. The Court notes, initially, that if Schwartz made a misrepresentation in another lawsuit, the proper place to seek imposition of a sanction for the misrepresentation itself is in that lawsuit, not this one. As it relates to the present motion for sanctions, the question is whether the alleged representations by Schwartz ran afoul of Judge Lee's preliminary injunction is some way.

As quoted above, the injunction prohibits Schwartz from "tak[ing] any action" in reliance upon certain Board of Directors minutes or his purported authority as CEO, and it provides a list of "[e]xamples of enjoined conduct." Schwartz argues that he cannot be found in contempt of the order for *statements* made in other litigation, which he contends do not constitute "action" or "conduct."

A district court may make a finding of civil contempt only if it finds by clear and

4

convincing evidence that the alleged contemnor "has violated the express and unequivocal command" of a court order. *In re Resource Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010). *See also, e.g., Ohr ex rel. NLRB v. Latino Exp., Inc.*, 776 F.3d 469, 474 (7th Cir. 2015) (party seeking contempt must establish that contemnor violated "an unambiguous command" in a court order); *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 711 (7th Cir. 2014) (same).

The question here is whether a prohibition against "action" and "conduct" applies to statements that the enjoined party made to another court. The text of the injunction suggests otherwise. The order's "[e]xamples of enjoined conduct" all involve doing things, not saying things. The line between conduct and speech, sometimes an issue in First Amendment disputes, is not always an easy one to draw, but here we are dealing with the terms of a written order and thus can apply principles commonly used in interpreting written instruments. In particular, the doctrine of *ejusdem generis* applies to the construction of arguably ambiguous terms in injunctions just as it does to statutes:

> When a court considers a list of specific terms that is then followed by a more general term, such as § 1.J of the injunction, the canon of *ejusdem generis* applies to resolve ambiguities in meaning. Under that canon, when general words follow the enumeration of particular classes, the general words should be construed as applying only to things of the same general class as those enumerated.

*FTC v. Garden of Life, Inc.*, 516 F. App'x 852, 858 (11th Cir. 2013) (internal quotation marks and citation omitted). The same is true for other written instruments, like contracts:

> Ejusdem generis provides guidance on how to interpret language where meaning is not plain. This Latin phrase confines the scope of a general term to the nature of the preceding class or thing, unless a contrary intent is clearly shown. Since the canon is intended only as an aid to ascertaining the intent of the drafters when uncertainty or ambiguity exists, it applies only when it is not possible to

5

determine the meaning of the words unless one focuses on the context. *Tourdot v. Rockford Health Plans, Inc.*, 439 F.3d 351, 353–54 (7th Cir. 2006) (internal citation omitted).

In this case, these principles apply. The injunction's list of examples of prohibited "action" all involve matters that one would commonly view as conduct, not speech: hiring and firing employees, entering into contracts, supervising business activities, and so on. The Court is not persuaded, at least for purposes of a contempt determination, that the preliminary injunction "unambiguously" or "unequivocally" reaches written or oral assertions by Schwartz that are not part of what is commonly understood as "conduct" and not simply speech.

Most of the claimed violations of the preliminary injunction order arising from filings and statements by Schwartz in litigation brought by EagleBank in Maryland litigation and a Sheriff's sale of assets that followed that litigation. *See* Pls.' Mot. for Sanctions at 7-8. As just indicated, the Court is not persuaded that the preliminary injunction's bar against "tak[ing] any action[ ]" and "conduct" is appropriately read as implicating the contents of written submissions that Schwartz made in defending against a civil suit or trying to head off the Sheriff's sale of Mesh Suture stock that resulted from that suit. The Court therefore overrules plaintiffs' contention that the defendants should be sanctioned—based on claimed violations of the preliminary injunction—for statements in filings they made in the Maryland litigation and to try to stop the sale. *See* Dkt. 383-12, 383-13 (summary of alleged violations of preliminary injunction in connection with Maryland litigation).

Plaintiffs also contend that certain emails that Schwartz sent to Mesh Suture's

6

product manufacturer, Corza Medical, run afoul of the preliminary injunction's prohibitions. But again, sending an email does not, in the Court's view, amount to a violation of the injunction's bar against "action[s] on behalf of Mesh Suture." In the emails, Schwartz purported to act not on behalf of the company itself, but as "a director of Mesh Suture and represent[ative of] its majority shareholder." *See* Pls.' Mot. for Sanctions at 4. The same is true of the allegedly defamatory Facebook post; Schwartz penned it "[a]s the former CEO of Mesh Suture." *See id.* at 6. To be clear, the Court is not suggesting that it was appropriate for Schwartz to make any of these statements; rather, the Court simply finds that plaintiffs have not clearly shown that they ran afoul of any clear or unambiguous prohibition in the preliminary injunction order.[1]

**2.      Statements regarding ownership of Mesh Suture stock**

In the Maryland litigation, which involved a claim by EagleBank against Mark Schwartz, Tax Lien Law Group, and Axis Investment Holdings Trust to collect on a promissory note and guaranty, EagleBank obtained a judgment against Schwartz for $3.5 million. The Maryland court then entered, in May 2023, a "charging order" against Mark Schwartz, essentially imposing a lien on any interests he held, including in his

---

[1] The Court takes no position on whether plaintiffs could successfully obtain a revision of the preliminary injunction that *would* impose clear prohibitions against positions taken by Schwartz in separate litigation and against otherwise representing that he is the CEO or a director of Mesh Suture.

With regard to the Maryland litigation, the Court also notes—as plaintiffs' counsel conceded at the hearing on the present motion—that Schwartz's opponents there were fully able to point out, in response to his filings, that he had lost the preliminary injunction in the present case and was precluded from "taking action" on Mesh Suture's behalf. Indeed, Schwartz did not prevail in the Maryland litigation; he lost and is appealing.

7

interest in Mesh Suture. *See* Pls.' Mot. for Sanctions, Ex. 4. In April 2024, the Maryland court granted a motion by EagleBank to sell Schwartz's interest in Mesh Suture. *See id.*, Ex. 5. The sale was scheduled for a date in December 2024.

On December 6, 2024, a few days before the scheduled sale of the Mesh Suture stock, an email from the email address of Schwartz's wife, Yajia Schwartz, was sent to various persons threatening legal action against Dumanian, EagleBank, Mesh Suture, and others participating in the sale. The email stated that

> [n]either my husband nor his Trust own or hold any stock in Mesh Suture, Inc. and have not since January 17, 2020. On that date, my husband's trust irrevocably transferred all of its interests to me, as the Sole Trustee of the Yajia Hu Schwartz Revocable Trust.

*Id.*, Ex. 6 at 1. The email further stated that this transfer "is fully documented in the corporate books and has been filed with the Puerto Rico Secretary of State, establishing my trust's uninterrupted majority ownership interest since January 2020." *Id.*

Plaintiffs contend that this email, ostensibly from Yajia Schwartz, was actually authored, or at least directed, by Schwartz. But no matter: two days later, on December 8, 2024, Schwartz himself filed an emergency motion before the Maryland court asking to stay the sale, and in that motion he adopted the same version of events described in Yajia Schwartz's December 6 email. *See id.*, Ex. 7. Among other things, Schwartz's motion stated that

> [t]he shares purported to be sold are not owned by Mark Schwartz, Esq., his Trust [sic]. On January 17, 2020, all relevant shares were irrevocably transferred to Yajia Hu Schwartz, as the sole trustee of the Yajia Hu Schwartz Revocable Trust ("YHS Trust"). . . . This transfer was lawfully executed, duly recorded in corporate books, and filed with the Puerto Rico Secretary of State. . . . Since January 2020, neither Mark Schwartz nor his Trust holds any interest in these shares. . . .

*Id.* at 2.

8

Plaintiffs contend that Schwartz's express disavowal of any ownership of Mesh Suture stock going back January 2020 directly contradicts at least the following testimony he gave during the preliminary injunction hearing before Judge Lee on March 19, 2022:

> Q;  And this is in the March 2019 time frame, when you and Greg [Dumanian] were contemplating putting money into the A-2 found to fund the company's operations; is that correct?
>
> A:  It wasn't even contemplating. We had done – we had put money into the operating account to bridge the company already.
>
> . . .
>
> Q:  At that point in time, you already owned a lot of stock in Mesh Suture, correct?
>
> A:  I did. *Greg and I are the majority owners of the company, and I'm the largest shareholder.*

Pl.'s Mot. for Sanctions, Ex. 10 at 295, 296 (emphasis added). Significantly, plaintiffs argue, Schwartz's preliminary injunction hearing testimony is worded in the present tense, indicating that he was saying that *as of March 2022*, he was the largest shareholder of Mesh Suture. If so, that would contradict Schwartz's later claim that he had transferred his shares to Yajia Schwartz over two years earlier, in January 2020. The Court notes that the claimed transfer is supported by purportedly contemporaneous documentation. *See* Dkt. 403 (copy of purported transfer documentation).

At the hearing on the present motion, the Court asked counsel for plaintiffs which statement by Schwartz they contend was false—his testimony before Judge Lee indicating that, as of March 2022, he was Mesh Suture's largest shareholder, or his statement to the Maryland court that he had transferred his Mesh Suture shares to Yajia Schwartz's trust in January 2020. Counsel responded that they contend the testimony

9

before Judge Lee was false.

This aspect of plaintiffs' motion for sanctions gives rise to two significant problems. The first is that the law is clear that a person may not be held in civil contempt simply for giving false testimony. *See In re Michael*, 326 U.S. 224, 227-28 (1945); *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 739 (7th Cir. 1999). Rather, for contempt to lie, "there must be added to the essential elements of perjury . . . the further element of obstruction to the court in the performance of its duty." *Ex parte Hudgings*, 249 U.S. 337, 383 (1919); *Jones*, 188 F.3d at 739. Without this, "the proper recourse against a witness who testifies falsely at trial is a subsequent prosecution for perjury." *Jones*, 188 F.3d at 740.

The unavailability of contempt as a sanction does not necessarily end this aspect of plaintiffs' motion; they also rely on a court's inherent authority to manage judicial proceedings and regulate the conduct of those appearing before it. *See, e.g., Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). A sanction under a court's inherent authority must be compensatory, not punitive. *See Goodyear Tire*, 581 U.S. at 108. One permissible sanction in this regard is to require reimbursement of the opposing litigant's attorney's fees and costs occasioned by the misconduct. *See Goodyear Tire*, 581 U.S. at 107; *Chambers*, 501 U.S. at 45. And dismissal of claims or (as applied here) entry of default are likewise permissible sanctions under a court's inherent authority where a party has abused the judicial process by seeking (or opposing) relief based on information the party knows is false. *See, e.g., Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). This requires "a finding that the culpable party willfully abused the judicial

10

process or otherwise conducted the litigation in bad faith." *Id.*

But this required predicate gets us to the second problem posed by Dumanian's motion to the extent it relates to claimed false testimony before Judge Lee: the interface with the criminal charges against Schwartz pending before another judge of this court. *See United States v. Schwartz*, Case No. 22 CR 635 (N.D. Ill.). Though the superseding indictment in that case does not charge Schwartz with perjury or any related offense relating to his claimed false testimony about stock ownership during the preliminary injunction hearing, it *does* charge him with perjury for other testimony *during that same hearing*. *See United States v. Schwartz*, No. 22 CR 635, dkt. 59, Count 7. And more generally, there is a significant amount of overlap between the underlying claims in the present civil case and the fraud and perjury charges in the pending criminal case. That is why, at an earlier date, the Court stayed discovery and other ongoing proceedings in the present case pending a disposition of the criminal case at the district court level (that case is now set for trial in January 2026).

The Court held an in-person hearing on the present motion. It was not an evidentiary hearing; the Court heard argument, not testimony. Schwartz, who is an attorney, represented himself. He did address the contention regarding false testimony, denying that he had made any misstatements and appearing to suggest that the testimony in question before Judge Lee was focused on control of the voting rights for the stock, which he says he retained, even after the purported transfer of the stock to his wife, via a "voting pledge agreement." Dkt. 404 (Apr. 4, 2025 transcript) at 27, 28-29. He said, "So I don't own the shares. I have the right to control them." Schwartz stated that any claimed inaccuracy in his testimony before Judge Lee was "immaterial

11

[and] out of context. I don't think we were discussing this issue at that hearing." *Id.* at 33.

More generally, however, Schwartz argued in his response to the motion for sanctions that requiring him to defend himself on the merits of the perjury allegation would cause him to "face[s] a no-win choice: (a) expose his criminal defense strategy in the civil forum, or (b) risk default or contempt by remaining silent." Defs.' Resp. to Mot. for Sanctions at 2.

Given the potential overlap with the criminal case and the Fifth Amendment implications of mounting a defense on the merits of plaintiffs' perjury claim, the Court concludes that the appropriate course with regard to this aspect of plaintiffs' motion for sanctions is to terminate it without prejudice to renewal after the criminal case is concluded at the district court level.

## Conclusion

For the reasons stated above, plaintiffs' motion for sanctions [dkt. 383] is denied as it relates to alleged misconduct other than claimed false statements regarding Mark Schwartz's stock ownership and terminated without prejudice to renewal as it relates to those claimed false statements. Defendants' motion to strike or dismiss the motion for sanctions [dkt. 386] is denied. Defendants' motion for ruling [dkt. 406] is denied as moot. A joint status report regarding the criminal case against defendant Mark Schwartz is to be filed on February 2, 2026. A telephonic status hearing is set for February 9, 2026 at 8:50 AM, using call-in number 650-479-3207, access code 2305-915-8729.

Date: August 17, 2025

_____
MATTHEW F. KENNELLY
United States District Judge